# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: March 16, 2026

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*
ANGELA GORNOWICZ,                     \*       UNPUBLISHED
                                      \*
            Petitioner,               \*       No. 17-2053V
                                      \*
v.                                    \*       Special Master Nora Beth Dorsey
                                      \*
SECRETARY OF HEALTH                   \*       Interim Attorneys' Fees and Costs.
AND HUMAN SERVICES,                   \*
                                      \*
            Respondent.               \*
                                      \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

Diana Lynn Stadelnikas, mctlaw, Sarasota, FL, for Petitioner.
Dima Jawad Atiya, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On December 28, 2017, Angela Gornowicz ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act," "the Program," or "the Act"), 42 U.S.C. § 300aa-10 et seq. (2018)[2] alleging that a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine she received on May 19, 2016, caused her to suffer multiple sclerosis ("MS"). Petition at 1, 3 (ECF No. 1); Joint Submission, filed Mar. 25, 2025, at 1 (ECF No. 137).

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

On August 28, 2025, Petitioner filed a motion for interim attorneys' fees and costs, requesting compensation for the attorneys who worked on her case. Petitioner's Renewed Motion for Payment of Petitioner's Interim Attorney's Fees and Reimbursement of Case Costs ("Pet. Mot."), filed Aug. 28, 2025 (ECF No. 165). Petitioner's request can be summarized as follows:

**Attorneys' Fees** – $459,315.20
**Attorneys' Costs** – $69,452.15

Petitioner thus requests a total of $528,767.35. Respondent filed his response on September 11, 2025, stating that he "defers to the [S]pecial [M]aster to determine whether or not [P]etitioner has met the legal standard for an interim fees and costs award . . . and the statutory requirements for an award of attorney's fees and costs." Respondent's Response to Pet. Mot. ("Resp. Response"), filed Sept. 11, 2025, at 2 (ECF No. 166). Petitioner filed a reply on September 19, 2025, reiterating the request for fees and costs. Pet. Reply to Resp. Response, filed Sept. 19, 2025 (ECF No. 169).

This matter is now ripe for adjudication. For the reasons discussed below, the undersigned **GRANTS IN PART** Petitioner's motion and awards **$503,573.98** in attorneys' fees and costs.

## I.    DISCUSSION

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 15(e)(1). When compensation is not awarded, the special master "may" award reasonable fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. If a special master has not yet determined entitlement, she may still award attorneys' fees and costs on an interim basis. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008). Such awards "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. Similarly, it is proper for a special master to award interim fees and costs "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim." Shaw v. Sec'y of Health & Hum. Servs., 609 F.3d 1372, 1375 (Fed. Cir. 2010).

The claim appears at this point to have been brought in good faith and built on a reasonable basis. Moreover, the undersigned finds that an award of interim attorneys' fees and costs is appropriate here where there are significant fees to be paid.

### A.    Attorneys' Fees

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are

2

"excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by Respondent and without providing the Petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).

A special master need not engage in a line-by-line analysis of Petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729 (2011). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Wasson v. Sec'y of Health & Hum. Servs., 24 Cl. Ct. 482, 484 (Fed. Cl. 1991), rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521.

### 1.    Hourly Rates

Petitioner requests the following hourly rates for the work of her counsel: for Mr. Altom Maglio, $362.00 per hour for work performed in 2017 and $381.00 per hour for work performed in 2018; for Ms. Anne Toale, $378.00 per hour for work performed in 2017, $402.00 per hour for work performed in 2018, and $535.00 per hour for work performed in 2023; for Ms. Danielle Strait, $340.00 per hour for work performed in 2019, $415.00 per hour for work performed in 2022, $450.00 per hour for work performed in 2023, and $520.00 per hour for work performed in 2025; for Ms. Diana Stadelnikas, $359.00 per hour for work performed in 2016, $396.00 per hour for work performed in 2018, $415.00 per hour for work performed in 2019, $440.00 per hour for work performed in 2020, $470.00 per hour for work performed in 2021, $490.00 per hour for work performed in 2022, $525.00 per hour for work performed in 2023, $560.00 per hour for work performed in 2024, and $605.00 per hour for work performed in 2025; for Ms. Jessica Olins, $410.00 per hour for work performed in 2025; and for Mr. Joseph Vuckovich, $415.00 per hour for work performed in 2023, $445.00 per hour for work performed in 2024, and $490.00 per hour for work performed in 2025. Petitioner also requests rates between $135.00 and $205.00 per hour for work of her counsel's paralegals from 2016 to 2025.

The undersigned finds that these requested rates are reasonable and in accordance with what has previously been awarded for their Vaccine Program work. See, e.g., Vorwerck v. Sec'y of Health & Hum. Servs., No. 18-749V, 2024 WL 1511985, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2024); Mekwinski v. Sec'y of Health & Hum. Servs., No. 22-1354V, 2024 WL 3677474, at *1 (Fed. Cl. Spec. Mstr. July 23, 2024); Garris v. Sec'y of Health & Hum. Servs., No. 22-1354V, 2025 WL 3677474, at *3 (Fed. Cl. Spec. Mstr. Nov. 18, 2025); Berchielli v. Sec'y of Health & Hum. Servs., No. 17-658V, 2025 WL 3079989, at *2 (Fed. Cl. Spec. Mstr. Oct. 8, 2025); Fedler-Deas v. Sec'y of Health & Hum. Servs., No. 21-2065V, 2025 WL 3280929, at *2 (Fed. Cl. Spec. Mstr. Oct. 29, 2025). Thus, the undersigned will award the rates requested.

## 2. Reduction of Billable Hours

In reducing an award of fees, the goal is to achieve rough justice, and therefore a special master may take into account their overall sense of a case and may use estimates when reducing an award. See Florence v. Sec'y of Health & Hum. Servs., No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (citing Fox v. Vice, 563 U.S. 826, 838 (2011)). It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Hum. Servs., 18 Cl. Ct. 751, 760 (1989). Petitioner bears the burden of documenting the fees and costs claimed.

Upon review of the submitted billing records, the undersigned finds the majority of the time billed to be reasonable. The timesheet entries are sufficiently detailed for an assessment to be made of the entries' reasonableness. However, reductions are necessary for the following reasons.

First, there are numerous duplicative billing entries from multiple members of mctlaw throughout the seven years of litigation. And as such, the undersigned finds a reduction necessary for "[u]nreasonably duplicative or excessive billing," which includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." Raymo v. Sec'y of Health & Hum. Servs., 129 Fed. Cl. 691, 703 (2016). The undersigned and other special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly. See, e.g., Sabella, 86 Fed. Cl. at 209 (affirming a special master's reduction of fees for overstaffing where three attorneys from two different firms worked on the same case); Van Vessem v. Sec'y of Health & Hum. Servs., No. 11-132V, 2018 WL 3989517, at *7 (Fed. Cl. Spec. Mstr. July 3, 2018) (finding that "it is not reasonable for both an attorney and a paralegal to bill for reviewing each filing in the case"). Such inefficiency is evident in this case.

For example, there are multiple entries from attorneys and/or paralegals reviewing the same filings. After the petition was filed on December 28, 2017, Ms. Toale billed for reviewing filings on January 1, 2018 and January 3, 2018, for a total of 0.7 hours.[3] The only filings at that time were the notice of designation of electronic case (filed in every case), order entering Ms. Heather Pearlman as attorney of record for Respondent (filed in every case), and the notice of assignment to the special master assigned to the case at that time. Then, on January 5, 2018, Ms. Toale billed 0.2 hours for reviewing the notice of assignment and 0.3 hours for "Reviewing draft pleadings," which at that time was only the petition.

---

[3] Other work was billed during the January 3 entry; however, it is impossible to discern how much time was spent reviewing filings due to counsel's block billing entry. "It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable." Mostovoy v. Sec'y of Health & Hum. Servs., No. 02-10V, 2016 WL 720969, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing Bell, 18 Cl. Ct. at 760); see also Broekelschen, 102 Fed. Cl. at 729.

On February 9 and 10, 2018, Ms. Toale and a paralegal both billed for reviewing a scheduling order from the Court. On June 7 and June 8, 2018, Ms. Stadelnikas and a paralegal both billed for reviewing a scheduling order from the Court. In August 2018, both Ms. Stadelnikas and a paralegal billed for reviewing an email from Respondent regarding their request for additional time. On October 9, 2018 and October 11, 2019, Ms. Stadelnikas and a paralegal both billed for reviewing a status report from Respondent and reviewing a non-PDF order from the Court. This practice continued over the more than seven years of litigation thus far.

There are also duplicative entries for two people attending the same internal conference/meeting. For example, June 29, 2022, a paralegal and Ms. Stadelnikas both billed for a conference/"case consult." On May 17, 2023, Ms. Stadelnikas and Ms. Strait billed for a conference/meeting to discuss the case.

Additionally, there are instances of duplicative billing by the same person for the same task. For example, on August 16, 2023, Ms. Stadelnikas billed twice for "[r]eview scheduling order regarding interim fees."

The second reason the undersigned finds a reduction necessary is due to paralegals billing for preparing documents for filing and filing documents,[4] which are non-compensable, administrative tasks. It is well known in the Vaccine Program that billing for some administrative tasks, even at a paralegal rate, is not permitted. See, e.g., Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); Paul v. Sec'y of Health & Hum. Servs., No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023) ("Clerical and secretarial tasks should not be billed at all, regardless of who performs them."). The preparation of records and exhibits for filing has repeatedly been deemed administrative and thus noncompensable. See, e.g., Wallace v. Sec'y of Health & Hum. Servs., No. 17-1074V, 2018 WL 6977489, at *2 (Fed. Cl. Spec. Mstr. Nov. 19, 2018) (noting the preparation of medical records an administrative and noncompensable task); Phelan ex rel. A.P. v. Sec'y of Health & Hum. Servs., No. 18-1366V, 2025 WL 1453777, at *3 (Fed. Cl. Spec. Mstr. Apr. 30, 2025) (same).

Third, a reduction is necessary due to billing entries from attorneys "[a]dvising paralegal[s]" to prepare, finalize, and/or file documents, while said paralegals were billing for such tasks. See, e.g., Vinocur v. Sec'y of Health & Hum. Servs., No. 17-598V, 2020 WL 3619896, at *2 (Fed. Cl. Spec. Mstr. June 29, 2020) ("In the undersigned's experience, the time

---

[4] For example, see entries dated December 28, 2017 ("file petition"); April 18, 2018 ("file" motion to substitute); June 6, 2019 ("finalize exhibits," notice of filing, and exhibit list by paralegal and "revise pleadings, notice[,] and exhibit list" by attorney); October 30, 2019 ("prepare [medical records] for filing"); November 21, 2019 (paralegal billing for finalizing numerous exhibits and "[r]eview confirmation of same"); September 11, 2020 ("prepare [medical records] for filing"); November 9, 2021 ("prepare [medical records] for filing"); April 3, 2023 ("preparation of exhibits"); March 25, 2025 ("facilitate filing").

it would take an experienced attorney to direct an experienced paralegal to file a certain document (particularly *pro forma* documents drafted by the paralegal) is so negligible that it should not be billed for at all."); O'Leary v. Sec'y of Health & Hum. Servs., No. 18-584V, 2022 WL 1055352, at *2 (Fed. Cl. Spec. Mstr. Mar. 21, 2022) (reducing fees for "attorney time directing paralegals to file documents"); Buchanan v. Sec'y of Health & Hum. Servs., No. 19-1649V, 2022 WL 9931077, at *2 (Fed. Cl. Spec. Mstr. Sept. 23, 2022) (same); Foster v. Sec'y of Health & Hum. Servs., No. 17-1502V, 2020 WL 3619919, at *2 (Fed. Cl. Spec. Mstr. June 23, 2020) (reducing fees "for excessive time billed by counsel to direct paralegal activity").

For example, on August 15, 2019, Ms. Stadelnikas billed for "[a]dvise paralegal regarding drafting [notice of filing], execution of same" and "[r]eview draft notices[] [and] [s]end correspondence to paralegal regarding same." And on that same day, the paralegal billed for "draft document," "[d]raft notice of filing and exhibit list for exhibit 12" and "[r]eview and finalize Notice of Filing and Exhibit list." In all, there are five separate billing entries pertaining to the preparation and filing of one exhibit on August 15, 2019, which is excessive. Additionally, on other occasions, Ms. Stadelnikas billed for preparing a document for filing (e.g., "[d]raft pleading") and "[a]dvising paralegal regarding filing of pleading." See, e.g., Pet. Ex. 47 at 15. Ms. Stadelnikas on other occasions also billed for "approving drafts" for filing and "[a]dvis[ing] paralegal," which was following by the paralegal billing for "[r]eview and finalize exhibits" and "[r]eview confirmation of same." Pet. Ex. 93 at 4.

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. Broekelschen, 102 Fed. Cl. at 729. It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Saxton, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged so long as a "concise but clear" justification for the reduction is provided. Abbott v. Sec'y of Health & Hum. Servs., 135 Fed. Cl. 107,111 (2017). Special masters need not explain how many hours are appropriate. Raymo, 129 Fed. Cl. at 702. "It would be unreasonable, however, to expect the Special Master to explain how each individual entry affected [her] final calculation, as in conducting fee determinations tribunals 'need not, and indeed should not, become green-eyeshade accountants.'" Abbott, 135 Fed. Cl. at 112 (quoting Fox, 563 U.S. at 838).

These are not new issues to Ms. Stadelnikas or mctlaw. See, e.g., Reed ex rel. I.R. v. Sec'y of Health & Hum. Servs., No. 08-650V, 2019 WL 2500417, at *4 (Fed. Cl. Spec. Mstr. May 21, 2019) (reducing fees by 5% for the same issues); Blender v. Sec'y of Health & Hum. Servs., No. 16-1308V, 2020 WL 5090439, at *3 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (same); Howells v. Sec'y of Health & Hum. Servs., No. 17-142V, 2023 WL 3750380, at *6 (Fed. Cl. Spec. Mstr. June 1, 2023) (same); Morrison v. Sec'y of Health & Hum. Servs., No. 18-386V, 2024 WL 5297958, at *5 (Fed. Cl. Spec. Mstr. Dec. 2, 2024) (same); Vazquez ex rel. A.R. v. Sec'y of Health & Hum. Servs., No. 17-1817V, 2025 WL 3143310, at *5 (Fed. Cl. Spec. Mstr. Oct. 16, 2025) (reducing fees by 5% and reducing pre-hearing briefing time by 10%).

For the above-mentioned reasons, the undersigned finds a 5% reduction necessary, reasonable, and appropriate here. See, e.g., Saxton, 3 F.3d at 1521(noting that the court must

6

exclude "hours that are excessive, redundant, or otherwise unnecessary" (quoting Hensley, 461 U.S. at 434)).  This results in a reduction of **$22,965.76**.[5]

### B.    Attorneys' Costs

Petitioner requests $69,452.15 for miscellaneous costs, including the filing fee, medical records, legal research, medical literature, and postage, and expert services rendered by Dr. Darin Okuda and Dr. Andrew Goodman.

The undersigned finds Petitioner has provided adequate documentation supporting most of these costs.  A small reduction of **$21.11**[6] is necessary due to missing supporting costs documentation.  Petitioner may request these costs in her final fees motion.

Additionally, Petitioner provided documentation for payment of the hearing transcript ($1,793.50) but did not include this cost in Petitioner's cost request.  See Pet. Ex. 94 at 61-62. The undersigned finds this cost should be awarded and the undersigned will include this cost in Petitioner's award here, resulting in an addition of **$1,793.50**.

Dr. Okuda requests $26,750.00 for 53.5 hours of work at a rate of $500.00 per hour.  The undersigned finds this rate reasonable and in accordance what Dr. Okuda has been granted in the past, and will award it in full.  See, e.g., Garris, 2025 WL 3677474, at *4.

Dr. Goodman requests $38,910.00 for 77.82 hours of work at a rate of $500.00 per hour. Dr. Goodman's hourly rate has not previously been awarded in the Program.  The undersigned will award the requested rate of $500.00 per hour in this case based on the qualifications of Dr. Goodman as a well-credentialled member of his field.  The undersigned notes that other special masters have determined this rate appropriate for other well-qualified neurologists.  See, e.g., Rodriguez v. Sec'y of Health & Hum. Servs., No. 19-729V, 2022 WL 16584904, at *6 (Fed. Cl. Spec. Mstr. Sept. 22, 2022) (awarding $500.00 hourly rate for a neurologist); Lewis v. Sec'y of Health & Hum. Servs., 149 Fed. Cl. 308, 317 (2020) (finding that special masters typically award $450.00 to $500.00 for neurologists).  As a result, the undersigned finds this rate reasonable.  However, the undersigned deducts **$4,000.00** for 8 hours of time billed for a third day of a hearing that did not occur.  See Pet. Ex. 94 at 60.

Thus, Petitioner's final cost award is **$67,224.54**.[7]

## II.    CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate Petitioner and her counsel as follows:

---

[5] $459,315.20 x 0.05 = $22,965.76.

[6] $6.46 (01/10/2017) + $7.10 (01/10/2019) + $6.95 (03/21/2019) +$0.60 (04/28/2020) = $21.11.

[7] $69,452.15 - $21.11 + $1,793.50 - $4,000.00 = $67,224.54.

| | |
|---|---|
| Requested Attorneys' Fees: | $459,315.20 |
| Reduction of Attorneys' Fees: | - $22,965.76 |
| Awarded Attorneys' Fees: | $436,349.44 |
| | |
| Requested Attorneys' Costs: | $69,452.15 |
| Reduction of Attorneys' Costs: | - $4,021.11 |
| Addition of Attorneys' Costs: | + $1,793.50 |
| Awarded Attorneys' Costs: | $67,224.54 |
| | |
| **Total Attorneys' Fees and Costs:** | **$503,573.98** |

**Accordingly, the undersigned awards:**

**Petitioner is awarded attorneys' fees and costs in the amount of $503,573.98 to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/ Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.